In the Matter of STANLEY A. SCHWARTZ, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 4, 1990

**APPEARANCES OF COUNSEL**

*Richard M. Maltz* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*William Goodstein* for respondent.

**OPINION OF THE COURT**

Per Curiam.

Petitioner, Departmental Disciplinary Committee for the First Judicial Department, moves for an order temporarily suspending respondent from the practice of law pursuant to Judiciary Law § 90 (4) (f) and directing him to show cause pursuant to Judiciary Law § 90 (4) (g) why a final order of censure, suspension, or disbarment should not be made.

The petition is based on a certificate of conviction issued out of the Supreme Court, County of New York, showing that on June 23, 1989 respondent was convicted, upon his plea of guilty, of one count of scheming to defraud in the second degree (Penal Law § 190.60) and one count of criminal possession of a forged instrument in the third degree (Penal Law § 170.20), both class A misdemeanors, and sentenced on September 20, 1989 to three years' probation and restitution in the amount of $5,000. Respondent acknowledges that both of these crimes, involving as they do fraud as a necessary element, are "serious crimes" within the meaning of Judiciary Law § 90 (4) (d) and that his suspension from the practice of law during the pendency of disciplinary proceedings is therefore automatic under Judiciary Law § 90 (4) (f), but asks that we set aside such suspension pursuant to Judiciary Law § 90 (4) (f) on the ground that his continued practice of law would be "consistent with the maintenance of the integrity and honor of the profession, the protection of the public and the interest of justice."

Respondent was admitted to the practice of law in New York by the First Judicial Department on December 29, 1967, has at all relevant times maintained an office for the practice of law in the First Judicial Department, and has never before been subject to any disciplinary action. He asserts that many of his professional efforts have been devoted to *pro bono* activities; that he has served the profession by assuming important positions in a Bar association; and that he is a recognized authority in the field of family law having coauthored a three-volume treatise on that subject.

Concerning his conviction of scheming to defraud, respondent asserts that he was employed by a "commercial entity" formed by a limited partnership to market legal texts and forms relating to wills, trusts and practice in the Surrogate's

Court, and that it was the limited partnership, not the commercial entity, which raised funds from investors and engaged in the activities resulting in the 16-felony-count indictment charging him and others with, among other things, engaging in a fraudulent scheme to sell shares in this limited partnership to the investing public. Respondent further asserts that his employment with the commercial entity commenced only after the prospectus of the limited partnership had been approved by the Attorney-General and investment funds already raised; that he did not participate in the solicitation of funds from investors; and that he was merely a salaried employee and nominal officer of the commercial entity formed to market what he had every reason to believe was a "marketable product". Concerning his conviction of criminal possession of a forged instrument, respondent asserts that when a group of investors was sued by a bank for repayment of loans issued to purchase shares in the limited partnership, he agreed to represent the group "as an accommodation" notwithstanding that his employment was with the commercial entity in an editorial capacity, and that he did not know that the confessions of judgment given by the investors to settle the action were forged. These confessions of judgment, respondent states, were executed by a certified public accountant who had brought the investors to the venture, and who was believed by respondent to have powers of attorney from the investors expressly authorizing him to settle the action. Although thus innocent of any fraudulent intent, respondent explains that he pleaded guilty to these two fraud misdemeanors after "weighing the hazards" of contesting an indictment containing many felony counts involving fraud, and asserts that he was sentenced to three years' probation only to "secure payment" of the $5,000 in restitution, implying that he would not have been sentenced to probation had his financial circumstances permitted him to make this payment all at once.

Respondent contends that the facts underlying his conviction have little or no bearing on his fitness to practice law, and that the Committee, once it has heard those facts, will agree. Aware of the strong policy of this court to prohibit the practice of law during a term of probation, respondent nevertheless believes that the Committee "may well recommend a lesser sanction than suspension co-extensive with probation, and perhaps a minimal suspension." An interim suspension,

he argues, could therefore "result in punishment and hardship in excess of a final determination of this Court."

Respondent's argument that his sentence of three years' probation "should not foreclose discretionary relief [lifting his automatic suspension] prior to a full hearing and a report" is well taken but unavailing. We suspend respondent now, at this preliminary stage of the disciplinary proceedings against him, not because we think attorneys on probation should never under any circumstances be permitted to practice law, but because we think his continuing to practice law at this time would not be consistent with the integrity and honor of the profession. While respondent's probationary status certainly contributes to that conclusion (*Matter of Richter*, 93 AD2d 505; *Matter of Hust*, 129 AD2d 156), we do not consider it sufficient by itself to warrant an interim suspension, and we consider also the nature of the crimes for which he has been convicted. We view those crimes as "serious" not only because defined as such by statute, but also in a colloquial sense—one involved a systematic scheme to defraud the public and the other an effort to compromise the administration of justice—and not comparable to the serious crimes in matters cited by respondent where only a censure or a minimal suspension was imposed (*Matter of Wolk*, 61 AD2d 691 [failure to file tax returns]; *Matter of Fahy*, 87 AD2d 340 [failure to file tax return]; *Matter of Lawson*, 90 AD2d 561 [3d Dept] [failure to file tax return]; *Matter of Higgins*, 105 AD2d 462 [3d Dept] [marihuana possession]; *Matter of Waggoner*, 114 AD2d 99 [assault by pointing a pistol at a police officer]). And, while we do not mean to restrict the evidence and argument that the Committee might wish to consider, respondent's cause is hardly advanced by a presentation which minimizes his criminal culpability even to the point of denying the fraudulent intent necessary to the crimes to which he has pleaded guilty. The certificate of conviction filed by the Committee is "conclusive evidence" of respondent's guilt of those crimes, and it is by no means clear that the Committee will view respondent's evidence as anything other than inconsistent with the essential elements thereof (22 NYCRR 603.12 [c]; *see Matter of Levy*, 37 NY2d 279).

Accordingly, the petition is granted, and respondent is suspended from the practice of law pending further order of the court.

CARRO, J. P., ASCH, KASSAL, WALLACH and RUBIN, JJ., concur.

Respondent is directed to show cause why a final order of suspension, censure or removal from office should not be made, and respondent is suspended from practice as an attorney and counselor-at-law in the State of New York, effective immediately, and until the further order of this court.